IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DINO IACULLO,                                    )
                                                 )
            Plaintiff,                           )
                                                 )
    v.                                           )     Civil Action No. 2:10cv589-TMH
                                                 )                (WO)
UNITED STATES OF AMERICA,                        )
                                                 )
            Defendant.                           )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

*Pro se* plaintiff Dino Iacullo ("Iacullo"), an inmate at the Federal Prison Camp in

Montgomery, Alabama, has sued the United States under the Federal Tort Claims Act

("FTCA"), 28 U.S.C §§ 1346(b) & 2671 *et seq*., alleging negligence in connection with the

failure of prison dental staff to provide him with adequate dental care.[1]  Iacullo seeks

damages of not less than $5,000.  (*Doc. No. 1 at 6-7.*)[2]  The United States has filed a special

report denying liability, which this court treats as a motion for summary judgment.  (*Doc. No.*

---

[1]  Iacullo's complaint names as defendants the United States; Dr. C.J. Gavarette (Chief Dental
Officer, FDC Miami); "John Doe" (Medical Director/Supervisor, FDC Miami); Dr. Joyce Davis
(Dental Officer, FCI Williamsburg, S.C.); "John Doe" (Medical Director/Supervisor, FCI
Williamsburg, S.C.); "John Doe" (Dental Officer FCI Bennettsville, S.C.); Dr. Luis Berrios (Medical
Director/Supervisor, FCI Bennettsville, S.C.); and other unnamed physicians and employees of the
United States.  (*Doc. No. 1 at 2.*)  An FTCA claim may only be brought against the United States.
*See* 28 U.S.C. § 2679(b)(1) and (d)(1).  The Attorney General has certified that the defendant
employees were acting within the scope of their office or employment at the time of the events out
of which Iacullo's claims arise.  Therefore, this court substitutes the United States as the sole
defendant pursuant to 28 U.S.C. § 2679(d)(1).

[2]  References to document numbers are to those assigned by the Clerk in the instant action.  Page
references in the pleadings are to those assigned by CM/ECF.

24.) Iacullo filed a response to the special report, including additional evidentiary materials. (*Doc. No. 37.*)  Upon consideration of the United States' motion for summary judgment, Iacullo's opposition to the motion, and the evidentiary materials submitted by the parties, the court concludes that Iacullo has failed to demonstrate a genuine dispute as to any material fact required to preclude entry of summary judgment for the Government.

## I.   SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials, and affidavits], which it believes demonstrate the absence of a genuine

---

[3] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word – genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id.*  "'Shall' is also restored to express the direction to grant summary judgment."  *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same; therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

[dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-24.

Once this initial burden is met, the other party must "go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995); *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *See Greenberg*, 498 F.3d at 1263.

## II.   DISCUSSION

### A.   Factual Background[4]

In October 1997, while incarcerated at the Federal Detention Center in Miami, Florida

---

[4] The facts and evidence are considered and discussed in the light most favorable to Iacullo, the party opposing summary judgment. *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002).

("FDC Miami"), Iacullo began experiencing pain in his #30 molar.[5] (*Doc. No. 37 at 4, ¶ 12.*)
Prison dental staff examined the tooth and informed Iacullo that further exploration was
necessary and that if pulp exposure were to be discovered, a root canal might be required to
save the tooth. (*Id.*) The pain in Iacullo's #30 molar persisted, and on November 3, 1997,
dental staff at FDC Miami performed an exploration of the tooth. (*Id.*) Although no pulp
exposure was found, a sedative restoration was performed, in which an old filling in the tooth
was removed and replaced with a temporary sedative filling. (*Doc. No. 24 - Hollinshed-
Miles Aff. at 3.*) Iacullo was advised that if the tooth became "symptomatic" in the future,
it would be necessary to replace the temporary filling with a permanent restoration.

Between August 1998 and April 2000, Iacullo was seen several times by dental staff
at FDC Miami for continued pain in his #30 molar. (*Hollinshed-Miles Aff. at 3, ¶¶ 5-6.*) X-
rays were taken of the tooth in February 1999; however, it is not apparent if they were
reviewed by dental staff at FDC Miami. (*Doc. No. 37 at 6, ¶ 17 n.4.*) While at FDC Miami,
Iacullo was not given a dental treatment plan, except that it was noted he must wait until he
arrived at his "designated institution," the Federal Correctional Institution in Marianna,
Florida ("FCI Marianna"), to receive treatment for his #30 molar. (*Id., ¶ 18.*)

Iacullo arrived at FCI Marianna in late 2000. There is no record of his being
evaluated by dental staff upon intake at the institution. He received dental prophylactic
cleaning in the dental clinic at FCI Marianna in July 2001. (*Hollinshed-Miles Aff. at 3 , ¶ 7.*)

---

[5] The #30 molar is the lower right first molar.

4

At the time, his oral hygiene was documented as "poor."  (*Id*.)

On December 2, 2003, Iacullo reported to dental sick call at FCI Marianna, complaining of pain in his #30 molar.  An examination revealed erosion of the temporary filling placed in the tooth in November 1997.  A new temporary filling was then placed in the tooth.

In September 2004, Iacullo was transferred to the Federal Correctional Institution in Williamsburg, South Carolina ("FCI Williamsburg").  Again, it does not appear that he was evaluated by dental staff upon intake. (*Doc. No. 37 at 7 , ¶ 21*.)  Iacullo was seen by a dentist at the institution on August 19, 2005.  Dental prophylactic cleaning was performed, and his oral hygiene was documented as "fair."  In September 2005, Iacullo was transferred back to FDC Miami.  After his arrival, he made several attempts to have continuing pain in his #30 molar attended to. (*Id. at 7-8, ¶¶ 24-25*.)

In September 2006, while at FDC Miami, Iacullo also began experiencing pain and discomfort in his #19 molar,[6] which was chipped and had an exposed filling. *(Doc. No. 1 at 3, ¶ 4.)*  Iacullo reported the problem with the #19 molar to prison dental staff and submitted a request to have the tooth treated.  (*Id.; Doc. No. 1 - Ex. B*.)  The response to the request indicated that an appointment would be scheduled. (*Doc. No. 1 at 3, ¶ 4*.)  However, during the next several months, while the pain in the #19 molar persisted, Iacullo was not seen for treatment. (*Doc. No. 1 at 3-4*.)  In early December 2006, Iacullo submitted another treatment

---

[6] The #19 molar is the lower left first molar.

5

request to the dental staff at FDC Miami. (*Doc. No. 1 at 3; Doc. No. 1 - Ex. C.*) In February 2007, when he was still not seen for treatment, Iacullo submitted another request, noting that he was in pain and that it was difficult for him to chew food. (*Doc. No. 1 at 4; Doc. No. 1 - Ex. D.*) He submitted several more requests through April 2007, but he was still not treated. (*Doc. No. 1 at 4; Doc. No. 1 - Ex. E.*) Iacullo was informed that he was on a waiting list. (*Id.*)

In July 2007, Iacullo was transferred back to FCI Williamsburg. He reported to sick call in the prison's special housing unit on July 23, 2007, complaining that the temporary filling in his #30 molar was worn. (*Doc. No. 1 at 4; Doc. No. 1 - Ex. F.*) The temporary filling was found to be defective, and the #30 molar was reinforced a third time with a new temporary filling. (*Id.*) There are no records of x-rays being taken, and no other dental care was performed at the time. (*Id.*)

On July 26, 2007, Iacullo was transferred to the Federal Correctional Institution in Bennettsville, South Carolina ("FCI Bennettsville"). (*Doc. No. 1 at 4-5.*) During the intake process at the institution, Iacullo complained of tooth pain and informed the screening medical staff of his dental problems. (*Id. at 5.*) He was provided with a six-month supply of pain medication. (*Id. at 4-5; Hollinshed-Miles Aff. at 4, ¶ 16.*) On August 5, 2007, Iacullo submitted a request for dental treatment stating that he had a broken molar with an exposed filling and a temporary filling that needed repair. (*Doc. No. 1 at 5.*) He again stated that he was in pain and that it was difficult for him to chew. (*Id.*) On August 15, 2007, Iacullo

6

received a response from the dental hygienist advising him that he should report to dental sick call if he was in pain. (*Id.*) On August 20, 2007, Iacullo submitted a request seeking to have his teeth cleaned. (*Id.*) There is no record of Iacullos's being evaluated by any dental staff while at FCI Bennettsville until he received dental prophylactic cleaning on October 11, 2007. His oral hygiene was documented as "fair" at the time. Following the cleaning, prison medical staff prescribed Iacullo antibiotics for an abscess that had developed in his #30 molar. (*Id.*)

In April 2008, at FCI Bennettsville, x-rays were taken of Iacullo's #19 and #30 molars. These were the first dental x-rays Iacullo received since February 1999 (at FDC Miami), and the first evaluation of his #19 molar since he reported pain in that tooth to prison dental staff in September 2006.

On June 12, 2008, Iaculllo was transferred to the Federal Prison Camp in Montgomery, Alabama ("FPC Montgomery"). There is no record of him being evaluated by a dentist upon intake at FPC Montgomery. On July 11, 2008, Iacullo reported to dental sick call at FPC Montgomery, complaining of pain in both his #19 and #30 molars. An evaluation determined that the lingual (inside) aspect of the #19 molar was broken and that the facial (outside) aspect of the # 30 molar was broken. Extraction of the molars was recommended by dental staff, because it was determined that both teeth were non-restorable due to excessive loss of tooth structure, pulpal involvement, and bone loss around both teeth. (*See Doc. No. 1 - Ex. A at 2.*) On July 17, 2008, Iacullo had surgical extractions of his #19 and

#30 molars. (*Doc. No. 1 - Ex. A at 2.*)

On July 27, 2009, Iacullo filed an administrative tort claim alleging negligence in dental treatment by BOP dental staff while incarcerated in South Carolina and Alabama. The claim was denied on January 12, 2010.

### B.    Iacullo's Claim for Relief

Iacullo claims that the negligent acts and omissions of BOP dental staff resulted in the loss of his #19 and #30 molars, prolonged and unnecessary pain, and permanent disability and disfigurement if his molars are not replaced. (*Doc. No. 1 at 5-6, ¶¶ 4-6.*)

### C.    Government's Motion for Summary Judgment

In its motion for summary judgment, the Government contends that there is no genuine dispute as to any material fact in the case. The Government's motion details the BOP's policy on dental care. (*Doc. No. 24 at 9.*) The Government reiterates, for example, that emergency dental care is of the highest priority, that non-emergency care is based upon available resources and that policy-related judgments guide decisions. (*Id. at 9-10.*) The Government concludes that Iacullo has not cited any evidence that his care departed from BOP regulations or that his treatment fell below the applicable standard of care. (*Id. at 10.*) With its motion, the Government includes an affidavit from a BOP dentist, Dr. Tanya Hollinshed-Miles, chief dental officer at FPC Montgomery. (*Doc. No. 24 - Hollinshed-Miles Aff.*) According to Dr. Hollinshed-Miles, Iacullo received appropriate dental care from the BOP. (*Id. at 7.*) She states that Iacullo was provided with dental cleanings and treatment on

a regular basis and that when it was determined that his #19 and #30 molars were not restorable, they were properly extracted in a timely manner.

**D.    The Federal Tort Claims Act ("FTCA")**

The FTCA imposes civil liability on the United States for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b); *United States v. Muniz*, 374 U.S. 150 (1963); *Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008).  The primary purpose of the FTCA is to "remove the sovereign immunity of the United States from suits in tort, and with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances."  *Richards v. United States*, 369 U.S. 1, 6 (1962); 28 U.S.C. § 1346(b).  The FTCA authorizes suit in the judicial district where the plaintiff lives or where the alleged tort occurred.  28 U.S.C. § 1402(b).

In the context of medical-malpractice FTCA claims, a claim accrues "when the plaintiff knows of both the injury and its cause." *Diaz v. United States*, 165 F.3d 1337, 1339 (11th Cir. 1999).  The rationale behind this rule is "to protect plaintiffs who are blamelessly unaware of their claim because the injury has not yet manifested itself or because the facts establishing a causal link between the injury and the medical malpractice are in the control

of the tortfeasor or are otherwise not evident." *Id*. Thus, "a medical malpractice claim under the FTCA accrues when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both [his] injury and its connection with some act of the defendant." *Id*. (quotation marks omitted); *see Price v. United States*, 775 F.2d 1491, 1494 (11th Cir. 1985); *Burgess v. United States*, 744 F.2d 771, 773 (11th Cir. 1984). Here, the undersigned finds that Iacullo could not reasonably have been aware of the accrual of his injury until extraction of his two molars was recommended by dental staff at FPC Montgomery on July 11, 2008, and it became evident that the BOP's actions and omissions in providing him with allegedly substandard dental care were connected to his injury.[7]

When analyzing a FTCA claim, courts apply the "whole" law, including the choice-of-law rules, of the state where the alleged act or omission occurred. *Richards*, 369 U.S. at 11; *Gonzalez-Jiminez De Ruiz v. United States*, 378 F.3d 1229, 1230 n.1 (11th Cir.2004); *Stone v. United States*, 373 F.3d 1129, 1130 (11th Cir. 2004); *see* 28 U.S.C. § 1346(b). In the instant case, Iacullo's administrative tort claim alleging medical malpractice encompasses acts and omissions of alleged relevance occurring in South Carolina and Alabama. Choice-of-law disputes in FTCA cases are resolved by applying the choice-of-law regime of the state in which the last significant act or omission occurred. 28 U.S.C.A. § 1346(b)(1); *see also, e.g., Ochran v. United States*, 273 F.3d 1315, 1317 (11th Cir. 2001). Here, Iacullo's

_____

[7] An administrative claim under the FTCA must be filed within two years after its accrual. 28 U.S.C. § 2401(b). The Government has not argued that Iacullo's administrative tort claim was untimely filed on July 27, 2009.

complaint asserts acts of malpractice occurring as late as, and after, his arrival in federal prison in Alabama.[8]  In addition, Iacullo was in Alabama when he possessed the critical facts of his injury and its alleged cause.  Consequently, Alabama's choice-of-law provisions apply. *See Rushing v. United States*, 288 Fed.App'x 616, 620 (11th Cir. 2008); *Gonzalez-Jiminez De Ruiz*, 378 F.3d at 1230 n.1.  In Alabama, the traditional choice-of-law rule of *lex loci delicti* governs tort causes of action and requires that the substantive law of the place where the tort occurred must be employed.  *Alabama Great So. R.R. v. Carroll*, 97 Ala. 126, 11 So. 803 (1892); *see Randolph v. Tenn. Valley Authority*, 792 F.Supp. 1221, 1222 (N.D. Ala. 1992) .  Section 6–5–484(a), Ala. Code 1975, which sets forth the standard of care for purposes of medical-malpractice law in Alabama, states in pertinent part:

> In performing professional services for a patient, a physician's, surgeon's, or dentist's duty to the patient shall be to exercise such reasonable care, diligence and skill as physicians surgeons, and dentists in the same general neighborhood, and in the same general line of practice, ordinarily have and exercise in a like case.

§ 6–5–484(a), Ala. Code 1975.  And Alabama courts have held:

> To recover damages for an alleged breach of this duty, a plaintiff must produce evidence that establishes 1) the appropriate standard of care, *Keebler v. Winfield Carraway Hospital*, 531 So. 2d 841 (Ala. 1988); *Dobbs v. Smith*, 514 So. 2d 871 (Ala. 1987), 2) the doctor's deviation from that standard, *Keebler*; *Dobbs*, and 3) a proximate causal connection between the doctor's act or omission constituting the breach and the injury sustained by the plaintiff. *Ensor v. Wilson*, 519 So.2d 1244 (Ala. 1987); *Howard v. Mitchell*, 492 So.2d 1018 (Ala. 1986).

---

[8] While not dispositive, the Government acknowledges in its special report that "a substantial part of the alleged negligence occurred in Alabama, [and therefore] Alabama state law will apply." (*Doc. No. 24 at 14*.)

*Bradford v. McGee,* 534 So.2d 1076, 1079 (Ala. 1988).  Unless the applicable standard of care would be obvious to a layperson, Alabama plaintiffs must "establish the defendant physician's negligence through expert testimony as to the standard of care and the proper medical treatment." *Pruitt v. Zeiger*, 590 So.2d 236, 237-38 (Ala. 1991).  In order "to prove causation in a medical malpractice case, the plaintiff must prove, through expert medical testimony, that the alleged negligence probably caused, rather than only possibly caused, the plaintiff's injury." *University of Alabama Health Servs. Found. v. Bush*, 638 So.2d 794, 802 (Ala. 1994).[9]

---

[9] Because Iacullo's administrative tort claim encompassed acts and omissions of alleged relevance occurring in South Carolina as well as in Alabama, South Carolina's choice-of-law rules were also candidates to govern this case. *See Gould Electronics v. United States*, 220 F.3d 169, 180 (3d Cir. 2000) (Third Circuit Court of Appeals provides guidance for analyzing FTCA cases where multiple acts or omissions occur in more than one state).  However, for purposes of Iacullo's case, there does not appear to be a meaningful conflict between South Carolina's and Alabama's underlying choice-of-law rules or South Carolina's and Alabama's underlying substantive law regarding medical-malpractice torts.  *See Gould*, 220 F.3d at 180 (where no true conflict exists between states' underlying choice-of-law rules or underlying substantive law, complex conflict-of-law analysis is unnecessary).  In South Carolina, as in Alabama, the law governing a tort action is determined by the *lex loci delicti*, the substantive law of the place where the tort occurred.  *Boone v. Boone*, 546 S.E.2d 191, 193 (S.C. 2001).  To establish liability in a medical malpractice case under South Carolina law, a plaintiff must produce evidence that establishes (1) the generally recognized practices and procedures which would be exercised by competent practitioners in a defendant doctor's field of medicine under the same or similar circumstances; (2) that the defendant doctor negligently deviated or departed from the recognized and generally accepted standards, practices and procedures; (3) that such negligent deviation from the generally accepted standards, practices and procedures was a proximate cause of the plaintiff's injury; and (4) that the plaintiff was injured.  *Cox v. Lund*, 286 S.C. 410, 414, 334 S.E.2d 116, 118 (S.C. 1985); *Ellis v. United States*, 484 F.Supp. 4, 10-11 (D.S.C. 1978).  Under South Carolina law (as with Alabama law), expert testimony is required in medical malpractice actions, except in situations where the common knowledge or experience of laymen is extensive enough for them to be able to recognize or infer negligence on the part of the doctor and also to determine the presence of the required causal link between the doctor's actions and the patient's medical problems.  *Pederson v. Gould*, 288 S.C. 141, 142, 341 S.E.2d 633, 634
(continued...)

Here, in opposition to the Government's summary-judgment motion, Iacullo submitted the sworn declaration of Mark Maggert, DDS, which Iacullo maintained was expert testimony sufficient to overcome the summary judgment motion. (*Doc. No. 37 - Maggert Aff.*)  In his declaration, Maggert avers that he reviewed and evaluated the records of Iacullo's dental treatment by BOP staff. (*Id.*) After setting forth a detailed accounting of that treatment, Maggert concludes that BOP staff negligently deviated from the appropriate standard of care in providing dental treatment to Iacullo and that the deviation from that standard of care resulted in Iacullo's loss of two of his molars and his prolonged and unnecessary pain. (*Id.*)

In a written Report and Recommendation entered on February 18, 2014, the undersigned Magistrate Judge found that Maggert's sworn declaration constituted expert testimony sufficient to raise a justiciable claim of medical malpractice in order to preclude entry of summary judgment for the Government.[10]  (*Doc. No. 62 at 15-16.*)  Consequently, the undersigned recommended that the Government's motion for summary judgment be denied.  (*Id. at 16.*)  The parties were allowed to file objections to the Magistrate Judge's Recommendation.   On March 6, 2014, the Government filed timely objections and

---

[9](...continued)
(S.C. 1986).

[10] The Recommendation of February 18, 2014, quoted at length from Maggert's declaration and included Maggert's representations regarding his educational background and professional experience as a licensed dentist. (*See Doc. No. 62 at 9-11.*)

supporting exhibits reflecting that, at the time Maggert executed his declaration, Maggert's license to practice dentistry had been suspended by the State of Florida (his state of licencing) based on his conviction for income-tax evasion in the United States District Court for the Middle District of Florida and that Maggert was serving his federal sentence for that offense at FPC Montgomery when he executed the declaration.  (*Doc. No. 63*; *Doc. No. 63 - Exs. 1-4.*)  The Government argues that because Maggert was not licensed to practice dentistry when he executed his declaration, he was not competent under Alabama's medical-malpractice law to provide expert testimony and, therefore, his declaration is insufficient to overcome the Government's summary-judgment motion.  (*Doc. No. 63 at 4.*)  The undersigned agrees, and an order has been entered withdrawing the court's Recommendation of February 18, 2014.  (*See Doc. No. 64.*)

The Alabama Medical Liability Act, § 6–5-548, Ala. Code 1975, requires that an expert testifying against a doctor or dentist in a medical-malpractice case be a "similarly situated health care provider."  *See Biggers v. Johnson*, 659 So.2d 108, 110 (Ala. 1995). Under the statute, a "similarly situated health care provider" is one who:

> (1)  Is licensed by the appropriate regulatory board or agency of this or some other state; and

> (2)  Is trained and experienced in the same discipline or school of practice; and

> (3) Has practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred.

14

§ 6–5-548(b), Ala. Code 1975.  "The purpose of this section is to establish a relative standard of care for health care providers.  A health care provider may testify as an expert witness in any action for injury or damages against another health care provider based on a breach of the standard of care only if he is a 'similarly situated health care provider' as defined above." § 6–5-548(e), Ala. Code 1975.

The Government has demonstrated that Maggert was not licensed to practice dentistry when he executed his declaration in support of Iacullo's claim.  Therefore, Maggert did not qualify as a "similary situated health care provider" under § 6–5-548, Ala. Code 1975, and he is not competent under § 6–5-548(e) to provide expert testimony in Iacullo's suit alleging medical malpractice by BOP dental staff.

Here, the proper standard of care in the performance of dental treatment, the breach of that standard of care, and the causal connection between that breach and Iacullo's injury would not be obvious to the average layperson.  *See Pruitt, supra,* 590 So.2d at 237-38. Consequently, Iacullo's case is insupportable without expert medical testimony.  Because Maggert's declaration is the only evidence offered by Iacullo apart from Iacullo's own allegations in his complaint, and Maggert is not competent to provide expert medical testimony regarding Iacullo's claims of medical malpractice, Iacullo fails to present any expert medical testimony of malpractice by BOP dental staff.  In the absence of such evidence, Iacullo has failed to demonstrate a genuine dispute as to any material fact required to preclude entry of summary judgment for the Government on his FTCA claim alleging

negligent dental care.

## III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the Government's motion for summary judgment be GRANTED and the claims asserted against the Government be DISMISSED with prejudice.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before March 27, 2014.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.  Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 th F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

16

DONE this 12th day of March, 2014.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE